IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAKISHA HOGUE <br> 84 Woodland Ave. <br> Coatsville, PA 19320 <br><br> Plaintiff, <br> v. <br><br> RED LION CARE, INC. <br> 300 E. Lancaster Ave., Suite 104 <br> Wynnewood, PA 19096 <br><br> Defendants. | CIVIL ACTION <br><br> DOCKET NO.: <br><br> **JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Lakisha Hogue (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Red Lion Home Care, Inc. (*hereinafter* referred to as "Defendant") for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201, *et. seq.*), the Pennsylvania Minimum Wage Act ("PMWA" - 43 P.S. §§ 333.101—333.115), and the Pennsylvania Wage and Collection Law ("PWCL" - 43 P.S. §§ 260.1 *et. seq.*). As a direct consequence of Defendant's unlawful actions (including failures to properly pay wages and overtime), Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the FLSA. This Court may also assert

supplemental jurisdiction over Plaintiff's state law claims, as they arise out of the same nucleus of operative facts as her federal law claims.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## **PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiffs are adult individuals, with addresses as set forth in the caption.

7. Defendant is a home care agency located at the above captioned address.

8. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## **FACTUAL BACKGROUND**

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff has been employed with Defendant since in or about December of 2019.

11. From the date of her hire until the present, Plaintiff has and continues to work for Defendant as a Home Health Aid.

12. Throughout her employment with Defendant, Plaintiff has always been an hourly, non-exempt employee.

13. At the time of her hire, Plaintiff was informed that she would be paid an hourly rate of $13.00 per hour for all work performed during her employment with Defendant.

14. While employed with Defendant, Plaintiff's paystubs were accessible through a payroll app called Viventium.

15. On the Viventium app, Plaintiff could view her paystubs as well as other information, such as her pay rate.

16. Throughout the entirety of her employment (until recently), Plaintiff's pay rate was always listed on the Viventium app as "$13.00" per hour.

17. However, despite being told by Defendant that she would be paid $13.00 per hour for any work performed and despite Defendant's payroll app stating that Plaintiff's pay rate was $13.00 per hour, Defendant never paid Plaintiff $13.00 per hour until in or about the end of December, 2020 (discussed further *infra*).

18. Instead of paying Plaintiff an hourly rate of $13.00 per hour (as promised), Defendant would consistently and unilaterally change Plaintiff's hourly rate without Plaintiff's consent and without providing any notice to Plaintiff. For example:

   i. From in or about December, 2019 until in or about the end of February, 2020, Plaintiff was paid an hourly rate of $11.38 per hour;

   ii. Beginning in or about March of 2020 and without any notice, Plaintiff's pay rate was decreased from $11.48 per hour to $10.30 per hour.

Plaintiff's pay rate remained $10.30 per hour until in or about the end of August, 2020.

    iii. From in or about September of 2020 until on or about December 26, 2020, Plaintiff's pay rate was again increased to $11.38 per hour.

    iv. From December 27, 2021 until the present, Plaintiff's pay rate has finally been increased to $13.00 per hour.

19. Plaintiff inquired with Defendant's management on multiple occasions about why she was not being paid her promised hourly rate of $13.00 per hour.

20. In response to her aforesaid inquiries, Plaintiff was given a host of confusing and fabricated explanations to try and make Plaintiff believe that she was being paid correctly. For example, Plaintiff was informed that her overtime hours made up for the difference between the reduced rate she was being paid and the $13.00 per hour rate that she was promised. Plaintiff was also told that she was in fact being paid $13.00 per hour when considering her gross pay divided by the total number of hours she worked.

21. For example, while Defendant was paying Plaintiff $10.30 per hour, her gross amount of pay divided by the number of hours she worked would equate to approximately $13.00 per hour. However, even under this illegal payroll practice, Plaintiff was still not being paid time and one half her correct hourly rate (which would equate to $19.50 per hour) for any hours worked over 40 hours in one week

22. Notably, Plaintiff was never told by Defendant that she was mistaken about her pay rate or that Defendant had changed Plaintiff's pay rate for any legitimate business reason, rather Defendant's management consistently tried to make up convoluted explanations as to why they believed they were in fact paying Plaintiff $13.00 per hour.

23. Towards the end of December, 2020/beginning of January, 2021, Plaintiff stopped working for one of her assigned clients, which resulted in a substantial reduction of Plaintiff's hours. In fact, this was the first time in Plaintiff's employment history with Defendant that her hours consistently fell below 45 hours per week (and typically below 40 hours per week).

24. It was only when Plaintiff's hours began to consistently fall below 40-45 hours per week that Defendant finally started paying Plaintiff $13.00 per hour (presumably because Defendant would only have to pay Plaintiff very little to no overtime compensation under Plaintiff's current schedule).[1]

25. Upon information and belief, Defendant's aforesaid illegal practice of unilaterally lowering an employee's hourly rate (without providing any notice) in order to avoid paying proper overtime wages is a company-wide practice and multiple employees within Defendant have been subjected to the same wage and hour violations as described above.

26. Defendant has committed the following wage, hour, and overtime violations as to Plaintiff:

   A. Defendant has intentionally not paid Plaintiff the correct pay rate for all hours worked on a weekly basis;

   B. Defendant has intentionally failed to pay Plaintiff time and one half her promised pay rate of $13.00 per hour; and

   C. In order to avoid having to pay Plaintiff time and one half her promised hourly rate of $13.00 per hour, Defendant unilaterally lowered her hourly rate without providing any notice.

---

[1] To add confusion to its incredibly puzzling and illegal payroll practices, Defendant has recently changed Plaintiff's pay rate to $11.38 per hour on its payroll app (even though it is now paying her $13.00 per hour).

5

27. Defendant's actions have been willful and intentional, as management has perpetuated an illegal payroll scheme to deprive Plaintiff (and other employees of Defendant) of substantial compensation.

**First Cause of Action**
**Violations of the Fair Labor Standards Act ("FLSA")**
(Unpaid Overtime Compensation)
- Against Both Defendants -

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. At all times relevant herein, Defendant is, and continues to be, an "employer" within the meaning of the FLSA.

30. At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

31. The FLSA requires covered employers, such as Defendant, to minimally compensate its "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

32. At all times during her employment with Defendant, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

33. Defendant knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

34. At the time of her hire, Plaintiff was informed that she would be paid an hourly rate of $13.00 per hour.

35. Furthermore, on the payroll app used by Defendant, Plaintiff's pay rate (up until recently) was always listed as $13.00 per hour.

36. Defendant failed to pay Plaintiff 1.5 times Plaintiff's regular rate of pay ($13.00 per hour) for every hour that she worked over 40 each workweek.

37. Even when Plaintiff inquired with Defendant as to why she was not being paid the correct rate, Plaintiff was never informed by Defendant that $13.00 per hour was not her correct pay rate or that it had changed her pay rate.

38. Instead, Defendant's management consistently tried to make up convoluted explanations as to why they believed they were in fact paying Plaintiff $13.00 per hour.

39. It is abundantly clear that Defendant instituted an illegal payroll scheme wherein it unilaterally lowered Plaintiff's pay rate (without providing any notice) in order to avoid paying proper overtime wages.

40. It was only when Plaintiff's hours began to consistently fall below 40-45 hours per week that Defendant changed Plaintiff's pay rate to $13.00 per hour.

41. As a result of Defendant's failure to pay Plaintiff the overtime compensation due to her, Defendant has violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

42. Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages, as well as penalties and interest.

## Second Cause of Action
## Violations of the Pennsylvania Minimum Wage Act ("PMWA")
(Unpaid Overtime Compensation)

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff was not properly paid for all owed overtime as explained s*upra*. And such actions constitute indefensible violations of the Pennsylvania Minimum Wage Act ("PMWA").

45. Plaintiff therefore seeks all remedies permitted under the PMWA for unpaid overtime wages, as well as penalties and interest.

### Third Cause of Action
### Violations of the Pennsylvania Wage and Collection Law ("PWCL")
(Non-payment of wages / Unlawful Wage Retention)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff had a verbal agreement with Defendant whereby Defendant agreed to compensate Plaintiff for all services she performed during her employment at rate of $13.00 per hour.

48. Defendant failed to compensate Plaintiff for all wages owed during her employment.

49. Instead of properly paying Plaintiff her promised and agreed upon pay rate of $13.00 per hour, Defendant instituted an illegal payroll scheme wherein it unilaterally reduced Plaintiff's hourly, defined, and agreed upon rate without Plaintiff's consent and without providing any notice.

50. Plaintiff was never informed by Defendant that $13.00 per hour was not her correct pay rate or that it had changed her pay rate.

51. In fact, when Plaintiff inquired with Defendant as to why she was not being paid correctly, Defendant's management consistently made up convoluted explanations as to why they believed they were in fact paying her $13.00 per hour.

52. Plaintiff performed the agreed-upon services for Defendant, and Defendant failed to properly compensate Plaintiff for the services rendered at her hourly rate as assured, previously agreed upon, and contractually owed.

53. These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, overtime wages, benefits, and other damages permitted by law;

B. Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

E. Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Dated: February 2, 2021

By:   */s/ Ari R. Karpf*
      Ari R. Karpf, Esquire
      David N. Korsen, Esquire
      3331 Street Road
      Two Greenwood Square, Suite 128
      Bensalem, PA 19020
      (215) 639-0801

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Lakisha Hogue | : | CIVIL ACTION |
| v. | : | |
| Red Lion Care, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (X)

| 2/2/2021 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 84 Woodland Avenue, Coatsville, PA 19320

Address of Defendant: 300 E. Lancaster Avenue, Suite 104, Wynnewood, PA 19096

Place of Accident, Incident or Transaction: Defendant's place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/2/2021  _____  ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [X] Labor-Management Relations
7. [ ] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
   *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
   *(Please specify):* _____

---

## ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 2/2/2021  _____  ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**JS 44** (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
HOGUE, LAKISHA

**(b)** County of Residence of First Listed Plaintiff: Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
RED LION CARE, INC.

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- 1 U.S. Government Plaintiff
- **X** 3 Federal Question *(U.S. Government Not a Party)*
- 2 U.S. Government Defendant
- 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | **X** 710 Fair Labor Standards Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | | | | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | 385 Property Damage Product Liability | 740 Railway Labor Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| | 362 Personal Injury - Medical Malpractice | | 751 Family and Medical Leave Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| | | | | | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- **X** 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from Another District *(specify)*
- 6 Multidistrict Litigation - Transfer
- 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FLSA (29USC201)

Brief description of cause:
Violations of the FLSA, PA Minimum Wage Act and PA Wage and Collection Law.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** **X** Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 2/2/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

[Print]  [Save As...]  [Reset]